Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Apelante<br><br>v.<br><br>ALICIA M. ARANA RIVERA, HELI RIVERA AUFFANT Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Apelados | KLAN202500168 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2023CV00988<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Sanchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de junio de 2025.

El Tribunal de Primera Instancia ("TPI"), por la vía sumaria, declaró *Sin Lugar* una acción de cobro de dinero contra los garantizadores de una deuda comercial. Según se explica en detalle a continuación, concluimos que erró el TPI, pues del expediente surge que no hay controversia sobre la existencia y exigibilidad de la deuda.

I.

En febrero de 2023, el Banco Popular de Puerto Rico (el "Banco") presentó la acción de referencia, sobre cobro de dinero (la "Demanda"), contra la Sa. Alicia M. Arana Rivera (la "Deudora"), el Sr. Heli Rivera Auffant y la sociedad de gananciales compuesta por ambos[1]. Se alegó que, en noviembre de 2009, Arana Rivera Law Offices, PSC (la "Oficina"), suscribió un "pagaré de línea de crédito"

---

[1] Posteriormente, el TPI acogió la determinación del Banco de desistir sin perjuicio en cuanto a la sociedad de gananciales.

por $25,000.00 (el "Préstamo"). Asimismo, se alegó que las partes demandadas garantizaron el Préstamo.

El Banco alegó que, bajo los términos del Préstamo, las partes demandadas adeudaban, al 7 de diciembre de 2021, la suma principal de $23,201.67, más $11,814.42 por intereses acumulados, más costas, gastos y honorarios de abogado.

Luego de diversos trámites, en junio de 2024, el Banco presentó una moción de sentencia sumaria (la "Moción"). Sostuvo que no existía controversia sobre el hecho de que la Deudora y su esposo, a raíz del Préstamo, adeudaban, al 4 de junio de 2024, $23,201.67 por concepto de principal, más $17,468.80 por intereses, más una "cantidad razonable por concepto de costas, gastos y honorarios de abogado, más los cargos recargos y gastos que se acumulen hasta la fecha de su total y completo pago".

Para apoyar las afirmaciones en la Moción, el Banco acompañó una declaración jurada de 17 de junio de 2024 (la "Declaración"), suscrita por el Sr. Rafael Miguel De Sevilla Rodríguez (el "Funcionario"). También se acompañó con la Moción copia de los requerimientos escritos de pago que el Banco le había cursado a la Deudora en conexión con el Préstamo.

La Deudora se opuso a la Moción. Arguyó que el Banco no había producido los "estados mensuales de la Flexilínea", a pesar de que ella los había solicitado como parte del descubrimiento de prueba. Sostuvo que, por tal razón, el Banco había quedado "impedido de probar su caso ... porque no hay manera de computar las sumas reclamadas". La Deudora acompañó su oposición con una "Verificación bajo penalidad de perjurio" (la "Declaración de la Deudora").

El 13 de diciembre de 2024, el TPI notificó una Sentencia (la "Sentencia") mediante la cual desestimó la Demanda.

El TPI determinó que no había controversia sobre el hecho de que los demandados garantizaron el Préstamo. También determinó que el Banco había demostrado ser el tenedor del pagaré y de la garantía en controversia. Asimismo, el TPI rechazó que la reclamación del Banco estuviese prescrita, pues no se había demostrado que el Préstamos fuesen de carácter mercantil o que el pagaré fuese un instrumento negociable. Similarmente, el TPI rechazó que el Banco hubiese incurrido en incuria. No obstante, el TPI concluyó que el Banco no había demostrado "cómo computó la cantidad adeudada", por lo que desestimó la Demanda.

El 30 de diciembre (lunes), el Banco solicitó la reconsideración de la Sentencia, lo cual fue denegado por el TPI mediante una Resolución notificada el 29 de enero. En la misma, consignó que el Banco no había "logr[ado] establecer la cantidad presuntamente adeudada a pesar de haber tenido oportunidad".

El 28 de febrero, el Banco presentó el recurso que nos ocupa. Subrayó que la Declaración, aun sin considerar un anejo a la misma objetado por la Deudora, adecuadamente sustenta los hechos expuestos en la Moción y que nada en el expediente contradecía lo afirmado en la Declaración. La Deudora presentó un alegato en oposición, en el cual reprodujo lo planteado ante el TPI. Resolvemos.

II.

La sentencia sumaria es un mecanismo cuya finalidad es "propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario". *Meléndez González et. al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata v. J.F Montalvo,* 189 DPR 414, 430 (2013). Este mecanismo procesal se rige por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. En particular, la Regla 36.3 (e) de Procedimiento Civil, *supra,* dispone que procede dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones

ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, si la hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. Así, se permite disponer de asuntos pendientes ante el foro judicial sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. *Meléndez González et. al., supra; SLG Zapata, supra; Const. José Carro v. Mun. Dorado,* 186 DPR 113, 128 (2012).

Si se concluye que "existe una controversia **real y sustancial** sobre hechos relevantes y pertinentes", no procede dictar sentencia sumaria. *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010) (Énfasis nuestro). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable. *Meléndez González et. al., supra; Ramos Pérez,* 178 DPR a la pág. 213, citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609; *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001); *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 577 (1997).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer, mediante prueba admisible en evidencia, la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Ramos Pérez, supra; Vera v. Dr. Bravo,* 161 DPR 308, 332-333 (2004). Cuando de las propias alegaciones, admisiones o declaraciones juradas, surge una controversia de hechos, la moción de sentencia sumaria es improcedente. *Mgmt. Adm. Servs., Corp. v. E.L.A.,* 152 DPR 599, 610 (2000).

Por su parte, quien se oponga a que se dicte sentencia sumaria debe controvertir la prueba presentada. La oposición debe

exponer de forma detallada y específica los hechos pertinentes para demostrar que existe una controversia fáctica material, y debe ser tan detallada y específica como lo sea la moción de la parte promovente pues, de lo contrario, se dictará la sentencia sumaria en su contra, si procede en derecho. Regla 36 (c) de Procedimiento Civil, *supra*. Cuando la moción de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte opositora no puede descansar en meras alegaciones y debe proveer evidencia para demostrar la existencia de una controversia en torno a un hecho material. A tales efectos, el juzgador no está limitado por los hechos o documentos que se aduzcan en la solicitud, sino que debe considerar todos los documentos del expediente, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes. *Const. José Carro v. Mun. Dorado*, 186 DPR a la pág. 130, citando a *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 280-281 (1990).

De otra parte, nuestro ordenamiento jurídico reconoce el mecanismo de la sentencia sumaria por insuficiencia de la prueba en situaciones en las que una parte alega que la parte antagonista no cuenta con suficiente evidencia para prevalecer en un juicio. *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 731 (1994). Bajo esta modalidad de la sentencia sumaria, una vez que las partes culminan un adecuado y apropiado descubrimiento de prueba, el promovente puede solicitar la sentencia sumaria alegando insuficiencia de prueba por parte del promovido. *Medina*, 135 DPR a la pág. 732. Destacamos que tanto la moción de sentencia sumaria como la oposición a esta, podrán ser acompañadas con documentos relacionados con el descubrimiento de prueba **o con evidencia afirmativa, aunque la misma no haya sido obtenida**

**mediante el descubrimiento**.[2]  *Medina*, 135 DPR a las págs. 732-733.

Asimismo, "[a] la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todas las normas y principios que tradicionalmente hemos indicado deben utilizarse por los tribunales al entender en una moción de sentencia sumaria." *Medina*, 135 DPR a la pág. 734.  Por consiguiente, de existir alguna "duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida".

### III.

Concluimos que el TPI erró al concluir que el Banco no había demostrado la cantidad adeudada bajo el Préstamo.  En la Declaración,[3] el Funcionario asevera que es el "oficial asignado" por el Banco al Préstamo.  Afirmó que el Banco, "en el curso ordinario de sus negocios", utiliza "un sistema de base de datos electrónico", el cual es "confiable" y, según el cual, "al 4 de junio de 2024", los demandados debían al Banco $23,201.67 "por concepto de principal, más la cantidad de $17,468.80 por concepto de intereses vencidos a dicha fecha y los cuales continúan acumulándose diariamente".

Más aún, en la Declaración se afirmó que "los fondos de la FlexiLínea se desembolsaban periódicamente" a petición de la Oficina, "haciéndose disponibles en la cuenta corriente #317-117446, en cuyos estados bancarios remitidos mensualmente se reflejaba su uso."  Se consignó que la "FlexiLínea se canceló el 12 de

---

[2] La parte promovida podrá derrotarla con sólo presentar una oposición acompañada con prueba que controvierta o que rebata la evidencia afirmativa presentada por el promovente.  Esta prueba en oposición a la sentencia sumaria puede ser admisible en evidencia o, aunque no sea admisible en la forma presentada, podría convertirse en una prueba admisible o dar lugar a una prueba admisible. *Íd.*

[3] Véase, *Declaración Jurada*, Apéndice 36 del recurso de apelación, a la pág. 213 y ss.

enero de 2015" y que esta "se convirtió en el Préstamo #101-2705486-8801" el 14 de agosto de 2015.

Contrario a lo planteado por la Deudora, no tiene pertinencia que la Declaración esté apoyada por un documento supuestamente "inadmisible" por no haberse suplido durante el descubrimiento de prueba. Como indicáramos previamente, una moción de sentencia sumaria por insuficiencia de la prueba o su oposición puede acompañarse de evidencia afirmativa que no fuera "necesariamente obtenida mediante la utilización de los mecanismos del descubrimiento de prueba". *Medina*, 135 DPR a la pág. 732. De todas maneras, aun partiendo de la premisa de que dicho documento no podía considerarse por el TPI, la Declaración, por sí sola, es suficiente para sustentar lo alegado en la Moción, lo cual no fue controvertido de forma alguna por los demandados.

En efecto, al oponerse a la Moción, la Deudora únicamente acompañó su escrito en oposición con una "Declaración de la Deudora". En la misma, no se controvirtió la cuantía que el Banco aseveró en la Declaración que se adeudaba, bajo los términos del Préstamo. Únicamente se aseveró que el Banco no había "presentado un estado de cuenta o tabla de amortización que me permita verificar si existe una deuda, su fecha(s) de incumplimiento y a cuánto asciende la cantidad por concepto de principal y/o intereses, si alguno".[4]

Por tanto, contrario a lo razonado por el TPI, la realidad es que el Banco sí acreditó, a través de la Declaración, sustentada por un oficial con conocimiento y acceso a los sistemas electrónicos utilizados ordinariamente por el Banco en sus negocios, la cuantía debida bajo los términos del Préstamo. Ello no fue refutado por los demandados, quienes solo han planteado que el Banco no proveyó

---

[4] Véase, *Oposición a Solicitud de Sentencia Sumaria del Banco Popular*, Apéndice 40 del recurso de apelación, pág. 368.

el detalle deseado por ellos en cuánto a la forma de computar dicha cuantía.

Adviértase que las declaraciones juradas son documentos que se pueden utilizar para apoyar u oponerse a una solicitud de sentencia sumaria. *SLG Zapata*, 189 DPR a la pág. 433. Los tribunales pueden conferirle valor probatorio, siempre que esta no se centre en conclusiones, sino en los hechos específicos que la sustenten. *Ramos Pérez*, 178 DPR a la pág. 225.[5]

En fin, los demandados en momento alguno han afirmado, ni mucho menos han intentado demostrar, que el cómputo del Banco sea erróneo. En estas circunstancias, no tiene pertinencia que el Banco haya omitido proveer un desglose detallado del historial de desembolsos y pagos relacionados con el Préstamo.

IV.

Por los fundamentos antes expuestos, se revoca la sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia para que, de conformidad con lo aquí dispuesto, dicte sentencia sumaria a favor de la parte demandante.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Pagán Ocasio disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[5] La Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5, exige que "[l]as declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del (de la) declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido".

| BANCO POPULAR DE PUERTO RICO<br><br>APELANTE<br><br>v<br><br>ALICIA M. ARANA RIVERA, HELÍ RIVERA AUFFANT Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>APELADOS | KLAN202500168 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV00988<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Marrero Guerrero.

## VOTO DISIDENTE DEL JUEZ PAGÁN OCASIO

En San Juan, Puerto Rico, a 20 de junio de 2025.

> "Dissents speak to a future age. It's not simply to say, 'My colleagues are wrong and I would do it this way.' But the greatest dissents do become court opinions and gradually over time their views become the dominant view. So that's the dissenter's hope: that they are writing not for today, but for tomorrow". -*Justice Ruth Bader Ginsburg.*

Muy respetuosamente disiento de la determinación tomada por la mayoría del Panel por entender que del expediente del caso surge diáfanamente que el Banco Popular de Puerto Rico (BPPR, el Banco o parte apelante) no contaba con prueba suficiente para probar su caso y que, sobre todo, no cumplió con lo requerido procesalmente para derrotar una moción de sentencia sumaria bajo el fundamento de insuficiencia de prueba. Con su proceder, al resolver que no hay controversia sobre la existencia y exigibilidad de la deuda, la opinión mayoritaria soslaya los cimientos de nuestro ordenamiento jurídico en materia de derecho procesal civil y de cobro de dinero. Veamos.

**I.**

El 28 de febrero de 2025, el Banco Popular presentó una *Apelación* en la que solicitó que revoquemos una *Sentencia* emitida, notificada y archivada digitalmente en autos por el Tribunal de Primera Instancia (TPI o foro primario) el 13 de diciembre de 2024.[1] En el dictamen, el TPI declaró No Ha Lugar la *Moción de sentencia sumaria* que presentó el BPPR y Ha Lugar la oposición a sentencia sumaria que radicó la señora Alicia M. Arana Rivera (señora Arana Rivera) y el señor Helí Rivera Auffant (señor Rivera Auffant) (en conjunto, los apelados). En consecuencia, desestimó la *Demanda* sobre cobro de dinero.

El 5 de marzo de 2025, emitimos una *Resolución* en la que le concedimos a los apelados hasta el 31 de marzo de 2025 para presentar su alegato en oposición.

El 31 de marzo de 2025, la señora Arana Rivera radicó por derecho propio un *Alegato en oposición* en el que nos solicitó que declaremos No Ha Lugar la *Apelación civil* y le ordenemos al BPPR pagar costas y honorarios de abogado.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales más relevantes a la atención del recurso.

**II.**

El caso de marras tiene su génesis el 1 de febrero de 2023 cuando el BPPR presentó una *Demanda* sobre cobro de dinero en contra de la señora Arana Rivera, el señor Rivera Auffant y la Sociedad Legal de Gananciales compuesta por ambos.[2] En ella, reclamó que los apelados le adeudaban $23,201.67, más $11,814.42 por concepto de intereses acumulados, en virtud de una *Garantía ilimitada y continua* que estos otorgaron en noviembre de

---

[1] Apéndice de la *Apelación*, Anejo 41, págs. 370-387.
[2] Íd., Anejo 1, págs. 1-14.

2009 para garantizar una línea de crédito provista por el Banco a favor de Arana Rivera Law Offices PSC (corporación), una corporación perteneciente a la señora Arana Rivera. En consecuencia, solicitó que a estos se les ordenara pagar las sumas adeudadas, más costas, honorarios de abogado, cargos, recargos y gastos aplicables.

Luego de múltiples trámites procesales[3], el 14 de junio de 2023, el TPI emitió una *Sentencia* sumaria en la que declaró Ha Lugar la *Demanda* y ordenó a los apelados pagar las sumas reclamadas.[4] En esa ocasión, el foro primario resolvió que la controversia planteada era una de estricto derecho y, por eso, no era necesario celebrar una vista en su fondo, ni recibir prueba adicional. Al respecto, concluyó que los apelados se habían obligado solidariamente a satisfacer la cuantía reclamada y que a la causa de acción de cobro de dinero le aplicaba un término prescriptivo de quince (15) años.

Posteriormente, el 20 de julio de 2023, los apelados acudieron ante esta Curia mediante un recurso de *Apelación*, el cual recibió el alfanumérico KLAN202300630.

El 30 de agosto de 2023, emitimos una *Sentencia* en la que resolvimos que existía controversia real sobre los hechos materiales que impedía la correcta adjudicación del caso por la vía sumaria y, por consiguiente, revocamos el dictamen del TPI y devolvimos el caso para la continuación de los procedimientos.

---

[3] Para una discusión más particularizada de los hechos procesales transcurridos en ese término, véase la *Sentencia* emitida por este mismo panel el 30 de agosto de 2023 en el caso KLAN202300630.

Adviértase que el 16 de mayo de 2023, a solicitud del BPPR, el TPI emitió, notificó y archivó digitalmente en autos una *Sentencia Parcial* en la que desestimó sin perjuicio la causa de acción en contra de la Sociedad Legal de Gananciales. Véase Entrada Núm. 36 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC)

[4] Apéndice de la *Apelación*, Anejo 26, págs. 103-105. Notificada y archivada digitalmente en autos el 15 de junio de 2023.

En específico, concluimos que existía controversia real sobre: (1) quién era el tenedor actual del pagaré; (2) qué tipo de instrumento era el pagaré; (3) si se trataba de un negocio jurídico mercantil; (4) cómo se computó la cantidad adeudada; (5) en qué fecha el BPPR canceló la línea de crédito y declaró vencida la deuda; (6) qué pagos realizó la corporación; (7) en qué fecha la corporación realizó el ultimo pago; (8) cuántos intereses acumularon las cuantías no pagadas; y (9) qué responsabilidad tenían los apelados por la deuda.

Devuelto el caso y tras múltiples trámites procesales, el 3 de junio de 2024, el TPI, en cumplimiento de nuestro mandato, celebró una *Conferencia sobre Estado de los Procedimientos*, cuyas incidencias quedaron recogidas en una *Minuta-Orden*, transcrita y emitida ese mismo día, notificada y archivada digitalmente al día siguiente.[5] Según la *Minuta-Orden*, comparecieron la señora Arana Rivera por derecho propio y el licenciado Jean Paul Juliá Díaz (licenciado Juliá Díaz) en representación del BPPR. Específicamente, el foro primario consignó que:

1. El licenciado Juliá Díaz informó que no realizó descubrimiento de prueba por entenderlo innecesario.
2. La señora Arana Rivera dio por terminado el descubrimiento de prueba al 31 de mayo de 2024.
3. A solicitud de la señora Arana Rivera, el TPI ratificó que no podía enmendar las alegaciones porque las partes dieron por culminado y sometido el descubrimiento de prueba.
4. Ambas partes <u>concurrieron</u> en que el caso podía atenderse mediante mociones dispositivas. Por ello, les concedió un término de treinta (30) días para presentar las mociones dispositivas que entendieran pertinentes. Asimismo, informó que señalaría la celebración de una vista argumentativa, si fuera pertinente.

Acto seguido, el 5 de junio de 2024, la señora Arana Rivera radicó una *Moción solicitando la desestimación con perjuicio de la Demanda al amparo de la Reglas 10.2 de Procedimiento Civil* en la que solicitó la desestimación de la *Demanda* por dejar de exponer

---

[5] Apéndice de la *Apelación*, Anejo 32, págs. 149-151.

una reclamación que justificara la concesión de un remedio, falta de parte indispensable y prescripción de la causa de acción.[6] A su entender, el BPPR no alegó la existencia del pagaré, ni quién era su portador.

El 17 de junio de 2024, la señora Arana Rivera presentó una *Solicitud de sentencia sumaria juramentada y/o de "non suit"* en la que solicitó al TPI que desestimara la *Demanda* y ordenara el pago de honorarios de abogado, gastos y costas del pleito.[7] Dentro del marco de la Regla 39.2(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(c), planteó que procedía la desestimación porque, según los hechos probados por el expediente, el BPPR no tenía derecho a la concesión de remedio alguno.

Respecto a los hechos incontrovertidos, argumentó que no estaba en disputa que el BPPR:

1. No alegó quién era el actual tenedor del pagaré.
2. No alegó que la corporación consintió al negocio jurídico entre ambas partes.
3. No requirió a la corporación que proveyera sus estatutos corporativos, una resolución corporativa delegando autoridad para consentir, estados de situación o financieros, copias de planillas de contribución sobre ingreso ni copia de las patentes municipales.
4. No requirió a los apelados que proveyeran información personal, número de seguro social, estados de cuenta bancarios o financieros, ni planillas personales de contribución sobre ingreso.
5. No requirió personalmente el pago a los apelados, ni reportó el incumplimiento a agencias de crédito.
6. Se negó a suplementar o enmendar la *Demanda* con alegaciones o datos que permitieran establecer el cómputo de la deuda reclamada, incluso después de determinaciones del TPI y del Tribunal de Apelaciones.
7. Renunció a su derecho de presentar prueba en apoyo del cálculo de las sumas reclamadas.
8. Se negó a proveer copia de los estados mensuales de la línea de crédito, estados de cuenta, tabla de amortización de la deuda y fechas o cantidades de los incumplimientos alegados.

En primer orden, como cuestión de derecho, reiteró que el BPPR no tenía legitimación activa para reclamar porque no alegó ser tenedor del pagaré.

---

[6] Íd., Anejo 34, págs. 159-162.
[7] Íd., Anejo 35, págs. 161-180.

En segundo orden, adujo que los contratos suscritos eran de adhesión y, sobre todo, nulos por falta de consentimiento e ilegalidad porque la corporación no otorgó resoluciones corporativas en las que consintiera a obligarse legalmente frente a terceros. Sobre la corporación, añadió que, dada su ausencia del pleito, faltaba una parte indispensable.

En tercer orden, argumentó que la deuda no era válida, líquida ni exigible porque se desconocía cómo el Banco computó el principal y los intereses reclamados. En específico, esbozó que, según el expediente, el TPI tendría que especular o inventar la fecha inicial del alegado incumplimiento, la fecha y cantidad del último pago al principal, la fecha y cantidad del cálculo de los intereses y si la corporación autorizó el negocio jurídico. Esto porque, como alegó, el expediente no contaba con prueba para establecer esos asuntos.

Por último, repitió que el TPI debía aplicar la doctrina de incuria porque el Banco dejó transcurrir quince (15) años desde el primer incumplimiento alegado y, en esa misma línea, puntualizó que la deuda estaba prescrita porque el pagaré era un instrumento negociable.

El 20 de junio de 2024, el BPPR radicó una *Moción de sentencia sumaria* en la que solicitó al TPI que dictara sentencia sumaria a su favor.[8]

En los méritos, planteó que atendió los nueve (9) hechos en controversia formulados por este Tribunal. En concreto, alegó que quedó probado que:

1. El BPPR era el tenedor actual del pagaré y la *Garantía ilimitada y continua.*
2. El Pagaré no es un "instrumento negociable", por ende, no le aplica la Ley de Transacciones Comerciales, supra, si le aplica el Código Civil de 1930, supra, para un "instrumento no negociable".
3. La otorgación de la FlexiLínea, convertida luego al Préstamo #101-2705486- 8801, no fue un "acto de

---

[8] Íd., Anejo 36, págs. 181-330.

comercio" (negocio jurídico mercantil), por eso no le aplica el Código de Comercio de Puerto Rico de 1932, supra, si el Código Civil de Puerto Rico, para un "acto civil".

4. La cantidad utilizada de la FlexiLínea hasta la fecha de cancelación y posterior conversión al Préstamo #101-2705486-8801 fue $23,201.67 de principal y $1,465.05 de intereses.

5. La FlexiLínea se canceló el 12 de enero de 2015 y se convirtió en el Préstamo #101-2705486-8801 el 14 de agosto de 2015.

6. Las cantidades adeudadas, a la fecha de conversión y según el sistema de base de datos electrónico, reflejaban los pagos realizados por la extinta corporación Arana Rivera Law Offices P.S.C. hasta entonces.

7. El último pago realizado por la extinta corporación Arana Rivera Law Offices P.S.C. para la FlexiLínea previo a su conversión al Préstamo #101-2705486-8801 fue en relación con la mensualidad de diciembre de 2014.

8. Los intereses acumulados se dieron en función del balance de principal, a la tasa estipulada, según reflejado en el historial de pago.

9. La responsabilidad es solidaria, según pactado expresamente en un contrato legal, válido y sin vicio, por lo que procede la reclamación directa, sin que sea necesaria la presencia de cualquier otra persona.[9]

Junto a su solicitud, incluyó el pagaré de la línea de crédito provista a favor de la corporación, el contrato de *Garantía ilimitada y continua* suscrito por los apelados, cuatro (4) cartas de cobro enviadas por el Banco a los apelados, una declaración jurada suscrita por un representante del Banco asignado a la línea de crédito, entre otros documentos.

Ese mismo día, el BPPR presentó una *Oposición a moción solicitando la desestimación con perjuicio* en la que solicitó al TPI que declarara No Ha Lugar la petición desestimatoria promovida por la señora Arana Rivera.[10] Según debatió, el Banco les notificó razonablemente a los apelados que le reclamaba una deuda contraída por la corporación, respecto a la que se obligaron como garantizadores solidarios. Asimismo, coligió que la señora Arana Rivera no demostró que la reclamación en su contra no prosperaría bajo supuesto alguno.

También, radicó una *Oposición a solicitud de sentencia sumaria juramentada y/o de "non suit"* en la que solicitó que se

---

[9] Íd., pág. 196.
[10] Íd., Anejo 37, págs. 331-333.

declarara No Ha Lugar la solicitud de sentencia sumaria promovida por la señora Arana Rivera.[11] Como cuestión procesal, articuló que el TPI autorizó al Banco a presentar prueba a través de su moción dispositiva, según surgía de la *Minuta-Orden* sobre la *Conferencia sobre Estado de los Procedimientos*. En otro sentido, advirtió que, de todas formas, la desestimación por insuficiencia de la prueba únicamente podía prosperar si el foro primario estimaba que no existía probabilidad para que la *Demanda* prevaleciera. Al respecto, contrapuso que la reclamación, sus anejos y los escritos posteriores establecieron un caso *prima facie* sobre cobro de dinero.

El 26 de junio de 2024, la señora Arana Rivera presentó una *Oposición a solicitud de sentencia sumaria del BPPR* en la que reiteró su solicitud desestimatoria.[12] Más aún, solicitó al foro primario que descartara la *Moción de sentencia sumaria* del BPPR porque no acató las órdenes del TPI sobre la presentación de prueba adicional a la que estaba en el expediente y violentó las estipulaciones acordadas por las partes. Además, repitió que la parte apelante no demostró a su favor los hechos que el Tribunal de Apelaciones formuló como controvertidos. Incluso, subrayó que el expediente judicial estaba desprovisto de información indispensable al respecto de esos hechos para dictar sentencia a favor del Banco.

El 13 de diciembre de 2024, el TPI emitió, notificó y archivó digitalmente en autos la *Sentencia* apelada en la que desestimó la *Demanda*, declaró Ha Lugar la *Oposición a solicitud de sentencia sumaria del BPPR* promovida por la señora Arana Rivera y resolvió No Ha Lugar la *Moción de sentencia sumaria* radicada por el BPPR.[13] Primariamente, concluyó que procedía dictar sentencia sumaria a favor de los apelados y que la *Demanda* dejó de exponer una

---

[11] Íd., Anejo 38, págs. 334-335.
[12] Íd., Anejo 40, págs. 349-369.
[13] Íd., Anejo 41, págs. 370-387.

reclamación que justificara la concesión de un remedio. En el dictamen, formuló las siguientes determinaciones de hechos:

1. El 23 de noviembre de 2009, el BPPR concedió a Arana Rivera Law Offices P.S.C. una línea de crédito por la cantidad de $25,0000.00 e intereses sobre el balance insoluto del principal hasta su saldo, a razón del 3% sobre el "prime rate".
2. En esa misma fecha, la señora Arana Rivera y el señor Rivera Auffant suscribieron una Garantía ilimitada y Continua a favor del BPPR.
3. El 21 de diciembre de 2018, el Secretario de Estado del Estado Libre Asociado de Puerto Rico revocó el certificado de incorporación de Arana Rivera Law Offices P.S.C.
4. El 1 de septiembre de 2023, la codemandada Alicia M. Arana Rivera citó para deposición al oficial bancario para los días 16 y 17 de noviembre de 2023.
5. El 10 de noviembre de 2023, la demandante le notificó a la codemandada Alicia M. Arana Rivera copias de los documentos que obraban en el expediente del oficial bancario citado a deponer, a saber, Rafael Miguel De Sevilla Rodríguez.[14]

Asimismo, el foro primario, enmarcó la discusión del resto de los hechos dentro de los mismos nueve (9) hechos materiales en controversia que fueron formulados por esta Curia en la *Sentencia* en el caso KLAN202300630. Al respecto, determinó, cumpliendo con nuestro mandato, que algunos de estos hechos <u>no estaban en controversia</u>.

En ese sentido, dispuso que: (1) el BPPR evidenció ser el tenedor del pagaré y, por ende, poseía el derecho de exigir el cumplimiento de la presunta deuda; (2) el pagaré era un instrumento no negociable; (3) el contrato que originó el pagaré no constituyó un contrato o negocio mercantil[15]; (4) el BPPR no demostró cómo computó la cantidad adeudada, ni probó qué cantidad de la línea de crédito utilizó la corporación; (5) no quedó claro en qué fecha BPPR canceló la línea de crédito, necesario para determinar cuándo se declaró vencida la deuda; (6) el Banco no demostró que los apelados advinieran responsables por la deuda

---

[14] Íd., págs. 374-375.
[15] Sobre este particular, el TPI resolvió que la señora Arana Rivera no demostró con prueba que destinó el préstamo a actividades comerciales o viabilizar su capacidad de hacer negocios como comerciante.

incurrida por la corporación; (7) la señora Arana Rivera otorgó el pagaré en calidad de presidenta de la corporación; (8) la posible responsabilidad personal y solidaria de la señora Arana Rivera y el señor Rivera Auffant surgían de la *Garantía ilimitada y continua*; (9) el BPPR sustentó sus planteamientos con evidencia que no fue parte del descubrimiento de prueba; (10) el Banco no logró establecer con claridad las gestiones que realizó para probar su caso, ni sometió la documentación necesaria para probar cada una de sus alegaciones, ni demostró válidamente las diligencias para notificar a la señora Arana Rivera y al señor Rivera Auffant sobre los esfuerzos de cobro de dinero. En virtud de ello, concluyó que la deuda reclamada no era cierta, ni determinada, ni exigible.

En otras consideraciones, resolvió que, en virtud de que el pagaré era un instrumento no negociable y no era un contrato mercantil, al caso le aplicaba el término prescriptivo de quince (15) años para las acciones contractuales, dispuesto en el Art. 1864 del antiguo Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5294 (Código Civil de 1930).[16]

Entretanto, respecto a la fecha en que la deuda fue declarada vencida, el TPI concluyó que las cartas sometidas por el BPPR se contradijeron entre sí. En concreto, resolvió que: (1) en una carta del 5 de diciembre de 2014, el Banco le comunicó a los apelados que la línea de crédito sería cancelada efectivo el 31 de diciembre de 2014 por falta de información necesaria para su renovación; (2) en otra misiva del 12 de enero de 2015, el Banco informó que la línea de crédito fue cancelada; y (3) en una carta del 6 de marzo de 2015, el Banco expresó que las mensualidades dejadas de pagar correspondían a enero y febrero de 2015 y que la cantidad ascendía

---

[16] El Código Civil de 1930, *supra*, ant. secs. 1 *et seq.*, fue derogado por la Ley Núm. 55 de 2020, la cual instituyó el Código Civil de 2020, 31 LPRA ant. secs. 5311 *et seq.* Sin embargo, hacemos referencia a las disposiciones del primero porque era el estatuto vigente al momento de los hechos.

a $1,273.43 por concepto de principal, más $436.18 por concepto de intereses. De esta forma, estimó que el BPPR reclamó por mensualidades transcurridas después de la alegada cancelación de la línea de crédito.

Por último, rechazó tomar en consideración un estado bancario que el Banco acompañó a una declaración jurada de uno de sus agentes, sometido en apoyo de la solicitud de sentencia sumaria, toda vez que fue presentado luego de concluido el descubrimiento de prueba sin que fuera compartido previamente a los apelados.

El 30 de diciembre de 2024, el BPPR radicó una *Solicitud de reconsideración* en la que solicitó al TPI que reconsiderara su *Sentencia*.[17] En contraste, argumentó que procedía dictar sentencia a favor del Banco o, en la alternativa, dejar sin efecto el dictamen y señalar la celebración de un juicio plenario.

El 3 de enero de 2025, la señora Arana Rivera presentó una *Oposición a moción de reconsideración* en la que solicitó al TPI que rechazara la reconsideración de la *Sentencia*.[18] En ella, recalcó que el BPPR no se opuso a su solicitud desestimatoria, ni estableció la cuantía de la alegada deuda. Asimismo, denunció que el Banco pretendía que se anulara la estipulación suscrita por las partes en la *Conferencia sobre Estado de los Procedimientos*.

El 29 de enero de 2025, el TPI emitió, notificó y archivó digitalmente en autos una *Resolución* en la que declaró No Ha Lugar la reconsideración solicitada.[19]

Inconforme aún, el 28 de febrero de 2025, el BPPR radicó la *Apelación civil* de epígrafe y le imputó al foro primario la comisión de los siguientes errores:

Primer Señalamiento de Error: Erró el Honorable Tribunal de Primera Instancia al emitir la *Sentencia* de la cual se recurre

---

[17] Íd., Anejo 42, págs. 388-395.
[18] Íd., Anejo 43, págs. 396-398.
[19] Íd., Anejo 44, págs. 399-403.

pues la misma es contraria a las disposiciones de las Reglas de Procedimiento Civil y su jurisprudencia interpretativa respecto a la adjudicación de una solicitud de sentencia sumaria y su oposición.

Segundo Señalamiento de Error: Erró el Honorable Tribunal de Primera Instancia al determinar que la *Demanda* de autos deja de exponer una reclamación que justifique un remedio aplicando el estándar de adjudicación de una moción de desestimación, en lugar del estándar de adjudicación aplicable a las solicitudes de sentencia sumaria.

Tercer Señalamiento de Error: Erró el Honorable Tribunal de Primera Instancia al violentar el mandato de este Tribunal de Apelaciones en el caso KLAN202300630 según dispuesto en la Sentencia de 30 de agosto de 2023.

En primer orden, argumentó que el TPI abusó de su discreción al desestimar la *Demanda* bajo el fundamento de no exponer una reclamación que justificara la concesión de un remedio porque, según los hechos materiales que determinó en controversia, correspondía que ordenara la celebración de un juicio plenario.

En segundo orden, apuntó que el TPI no debió descartar la declaración jurada que el BPPR presentó a favor de su solicitud de sentencia sumaria bajo el fundamento de que fue presentada luego de culminar el descubrimiento de prueba sin que fuera compartida a los apelados. Según su posición, como la declaración jurada fue utilizada únicamente para evidenciar el historial de pago de los apelados, el foro primario únicamente podía descartarla respecto a ese propósito y no en su totalidad. De igual manera, resaltó que nada de los suscrito en la declaración jurada fue contradicho por el expediente judicial.

En tercer orden, planteó que la oposición de la señora Arana Rivera estuvo predicada solamente en meras alegaciones y evidencia inadmisible. A esto, añadió que el TPI debió descartar la verificación bajo pena de perjurio que la señora Arana Rivera presentó en apoyo de su oposición a la sentencia sumaria porque no era una declaración jurada. Según arguyó, al no hacerlo, el foro primario abusó de su discreción al violentar las normas que las Reglas de Procedimiento Civil, *supra*, establecen para la atención de

solicitudes de sentencia sumaria y oposiciones a estas, las cuales únicamente permiten declaraciones juradas. Al respecto, argumentó que la verificación no cuenta con una juramentación, ni una legitimación de firma.

Por último, arguyó que el TPI excedió los límites impuestos por la *Sentencia* del Tribunal de Apelaciones en el caso KLAN202300630 sobre los hechos materiales en controversia a dilucidar. Según adujo, la suficiencia de las alegaciones de la *Demanda* no era una de las controversias a atender. Más allá, arguyó que, al ejercer su función revisora, esta Curia confirmó la suficiencia de las alegaciones de la reclamación.

El 31 de marzo de 2025, la señora Arana Rivera presentó un *Alegato en oposición* en el que solicitó que confirmemos la *Sentencia* apelada. Al respecto, reafirmó que el BPPR no demostró la cuantía de la deuda reclamada, ni atendió el resto de los señalamientos de la *Sentencia* en el caso KLAN202300630.

De igual forma, repitió su denuncia de que el Banco ha pretendido anular la estipulación realizada por las partes en la *Conferencia sobre Estado de los Procedimientos* y que se le permitiera presentar evidencia sin ser anunciada ni descubierta. Según subrayó, la parte apelante renunció a la presentación de prueba adicional, optó por someter el caso por el expediente y aceptó que se resolviera por mociones dispositivas a sabiendas de que las alegaciones y los documentos que constaban en el expediente no permitían la concesión de un remedio.

Por último, nos solicitó que ordenemos al BPPR pagarle honorarios de abogado, pese a representarse por derecho propio, y así establezcamos un precedente para casos con un alto grado de temeridad.

Pormenorizados los hechos procesales más relevantes, particularizamos el derecho aplicable al recurso.

## III.

### A.

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services,* 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad de la reclamación o parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. *Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria.

***Meléndez González et al. v. M. Cuebas,*** 193 DPR 100, 138 (2015);

***Ramos Pérez v. Univisión,*** 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas,*** supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión,*** supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria,* 3 (Núm. 2) Fórum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En específico, respecto a la moción de sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra,* establece lo siguiente:

> (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente:
> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos

hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas,*** supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión,*** supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo,*** supra; ***Ramos Pérez v. Univisión,*** supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona,*** 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra*, en lo pertinente a este mecanismo procesal. Entre estos, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) dispone:

> (b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
>
> (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;
>
> (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con

> indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

A estas disposiciones, la Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c) añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36, la parte promovida no podrá descansar únicamente en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar tan detallada y específicamente como lo haya hecho la parte promovente de la moción. Íd. De no hacerlo, la referida Regla prescribe que se dictará la sentencia sumaria en su contra, si procede. Íd.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de derecho. ***Oriental Bank v. Perapi et al.***, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una

determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en **Meléndez González et al. v. M. Cuebas,** supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra,* y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. Íd., pág. 119.

**B.**

Nuestro Tribunal Supremo ha reconocido que existen, en esencia, dos modalidades de sentencia sumaria. *Medina v. M.S & D. Química de P.R., Inc.,* 135 DPR 716, 731-732 (1994); véase también *Celotex Corp. v. Catrett,* 477 US 317 (1986) (Reconociendo que bajo la Regla 56 de Procedimiento Civil Federal, Fed. R. Civ. P. 56, existe la modalidad de sentencia sumaria por insuficiencia de la prueba). La primera, la más tradicional, es aquella que se dicta cuando los documentos ofrecidos por la promovente demuestran ausencia de controversia real sobre los hechos esenciales del caso y únicamente corresponde aplicar el derecho. *Jusino et als. v. Walgreens,* 155 DPR 560, 577 esc. 15 (2001); *Medina v. M.S & D. Química de P.R., Inc.,* supra, pág. 732. La segunda se conoce como la sentencia sumaria por insuficiencia de la prueba y es aquella que se dicta cuando, después de un descubrimiento de prueba exhaustivo, se determina que la prueba existente no es suficiente o adecuada para sostener las alegaciones y los elementos esenciales de la reclamación y, por ello, únicamente corresponde desestimarla. Íd.; *Medina v. M.S & D. Química de P.R., Inc.,* supra. A esta segunda le aplican las mismas normas y

principios que tradicionalmente se han aplicado al considerarse mociones de sentencia sumaria. ***Medina v. M.S & D. Química de P.R., Inc.,*** supra, pág. 734.

Bajo la modalidad de insuficiencia de prueba, la parte promovente puede presentar su moción de sentencia sumaria después de que las partes han realizado un adecuado y apropiado descubrimiento de prueba. Íd., pág. 732. Además, puede acompañar su moción de documentos o someterla sin documento alguno, cuando estos obran en el expediente del tribunal. Íd. También, puede incluir evidencia afirmativa que niegue algún elemento esencial de la reclamación. Íd.

Lógicamente, la parte promovente tiene el peso de demostrar que la parte promovida no cuenta con evidencia admisible suficiente para aprobar al menos un elemento esencial. Íd. También, tiene el peso de demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado, evidenciando que ha explorado la posibilidad de la existencia de evidencia admisible. Íd., pág. 733. Es decir, tiene que poner al tribunal en posición de evaluar si el descubrimiento de prueba realizado fue adecuado. Íd. Para hacerlo, no será suficiente una simple alegación de que no existe evidencia suficiente para probar el caso. Íd. Tampoco se considerará adecuado el descubrimiento de prueba cuando surja de un análisis de los documentos sometidos en apoyo de la solicitud, la oposición y el expediente que la parte promovente omitió auscultar alguna información que condujera a obtener prueba admisible. Íd.

Entretanto, en aras de derrotar una moción de sentencia sumaria bajo esta modalidad, la parte promovida puede: (1) presentar prueba admisible, que pueda tornarse admisible o que dé lugar a prueba admisible, para probar los elementos esenciales del caso; (2) evidenciar que existe prueba en el récord que derrotaría la contención de insuficiencia; (3) demostrar que la solicitud es

prematura porque el descubrimiento no fue adecuado, fue incompleto o no se realizó; o (4) probar que no conviene resolver el caso mediante sentencia sumaria. Íd., pág. 734.

En resumidas cuentas, para que el tribunal pueda dictar sentencia sumaria por insuficiencia de la prueba, la parte promovente debe persuadirlo de que: (1) no es necesario celebrar una vista evidenciaria; (2) la parte promovida no cuenta con evidencia suficiente para probar algún hecho esencial; y (3) como cuestión de derecho, procede la desestimación. *Pérez v. El Vocero de P.R.,* 149 DPR 427, 447 (1999). Ahora bien, también es necesario que se le haya brindado al promovido una amplia oportunidad de realizar un descubrimiento de prueba adecuado. Íd. Por eso, es posible definir un cuarto requisito: que se haya realizado un descubrimiento de prueba adecuado. Mientras tanto, para impedir que se dicte sentencia sumaria bajo esta modalidad, la parte oponente debe persuadir al foro primario de la ausencia de un descubrimiento de prueba adecuado o debe producir aquella evidencia que probaría los elementos esenciales y materiales del pleito. *Cabrero v. Zayas,* 167 DPR 766, 786 (2006) (Sentencia).

De ordinario, esta norma parte del principio de que le corresponde a la parte demandante probar su caso. *Ramos Pérez v. Univisión,* supra, pág. 218. Aún más, no hay razón para ir a juicio cuando la parte demandante no tiene prueba a su favor tras culminar el descubrimiento de prueba. Íd., pág. 218-219. Ahora bien, dicha parte no queda desamparada, toda vez que, bajo la Regla 36.6 de Procedimiento Civil, *supra,* puede solicitar que se posponga la consideración de la moción de sentencia sumaria hasta que se complete un descubrimiento de prueba adecuado. Íd., pág. 219. Completado este, dicha parte tendrá que oponerse a la moción. Íd.

## C.

La Regla 10 de Procedimiento Civil, *supra*, R. 10, establece el mecanismo que las partes deben utilizar para presentar sus defensas y objeciones en un pleito. De acuerdo con la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, las defensas de hechos o de derecho contra una reclamación deben exponerse en la alegación responsiva. Ahora bien, la citada Regla también enumera varias defensas que, a opción de la parte y excepcionalmente, pueden levantarse mediante una moción al efecto debidamente fundamentada.

De esta forma, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra*, permite que un demandado solicite al tribunal la desestimación de la demanda presentada en su contra por <u>dejar de exponer una reclamación que justifique la concesión de un remedio</u>.

Al resolverse una moción de desestimación realizada al amparo de este fundamento, el tribunal está llamado a tomar como ciertos <u>todos los hechos que en la demanda fueron bien alegados, aseverados de manera clara y concluyente y que de su faz no den margen a dudas</u>. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). Esto es, tiene que dar por ciertas y buenas todas las alegaciones fácticas incluidas en la demanda. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). Además, dichas alegaciones tienen que interpretarse conjunta, liberal y favorablemente hacia la parte demandante. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, págs. 428-429.

De esta forma, la demanda solo será desestimada si se demuestra que la parte demandante no tiene derecho a remedio alguno bajo cualquiera de los hechos que pudiera probar. Íd., pág. 429. En esencia, el tribunal tiene que evaluar, a la luz de la interpretación más favorable a la parte demandante y resolviendo

toda duda a su favor, si la demanda es suficiente para constituir una reclamación válida. Íd.

En fin, la moción de desestimación por este fundamento debe demostrar "de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". *Ortiz Matías et al., v. Mora Development,* 187 DPR 649, 654 (2013).

## D.

De ordinario, en la reclamación sobre cobro de dinero, el demandante solo tiene que probar que: (1) existe una deuda válida; (2) la deuda no se ha pagado; (3) el demandante es el acreedor; y (4) la parte demandada es la deudora. *General Electric v. Concessionaries, Inc.,* 118 DPR 32, 43 (1986).

En cuanto a la deuda, es necesario demostrar que la misma es líquida, vencida y exigible. *Ramos y otros v. Colón y otros,* 153 DPR 534, 546 (2001). Dentro de este marco, una deuda es líquida cuando la cantidad debida es cierta y determinada. Íd. Es decir, cuando se conoce la cuantía que se debe. Asimismo, es exigible y vencida cuando debe ser satisfecha por la naturaleza de la obligación o por requerimiento del acreedor. Véase *Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950).

## E.

La Regla 44 de Procedimiento Civil, *supra,* R. 44, establece las normativas que rigen la concesión de costas y honorarios de abogado, así como el interés legal aplicable a estas. En concreto, la Regla 44.1(a), *supra,* R. 44.1(a) define las costas, disponiendo que estas comprenderán "los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra".

Entretanto, la Regla 44.1(d), *supra*, R. 44.1(d), rige los honorarios de abogado, prescribiendo lo siguiente:

> (d) *Honorarios de abogado.* En caso que cualquier parte o su abogado o abogada <u>haya procedido con temeridad o frivolidad</u>, el tribunal **deberá** imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado <u>que el tribunal entienda correspondan a tal conducta</u>. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado. (Énfasis y subrayado nuestro).

De esta norma, se colige que: (1) si un tribunal determina que una parte actuó con temeridad o frivolidad, entonces está obligado a imponerle el pago de honorarios de abogado; y (2) la cuantía impuesta deberá responder a la conducta incurrida.

Para nuestro más alto foro, la imposición de honorarios de abogado y su cuantía es un asunto discrecional del tribunal que únicamente puede ser variado ante un abuso de discreción. ***SLG González-Figueroa v. SLG et al.,*** 209 DPR 138, 150 (2022); ***S.L.G. Flores-Jiménez v. Colberg,*** 173 DPR 843, 866 (2008); ***Blas v. Hosp. Guadalupe,*** 146 DPR 267, 334 (1998). También, haciendo eco de la referida regla, ha reiterado que, si se determina la existencia de temeridad, entonces la imposición del pago de honorarios de abogado es mandatoria. ***Colón Santos v. Coop. Seg. Mult. P.R.,*** 173 DPR 170, 188 (2008); ***Fernández v. San Juan Cement Co., Inc.,*** 118 DPR 713, 717 (1987).

Si bien las Reglas de Procedimiento Civil, *supra,* no proveen una definición de temeridad, cabe indicar que tanto el significado, como los contornos de este amplio concepto han sido objeto de extenso estudio por nuestros tribunales. En ese sentido, se concibe que son temerarias las actuaciones de un litigante que: (1) llevan a un pleito que pudo evitarse; (2) provocan la prolongación indebida del trámite judicial; (3) obligan a otra parte a incurrir en gastos innecesarios para defenderse; o (4) dilatan los procedimientos para

que no responda por sus obligaciones. ***SLG González-Figueroa v. SLG et al.,*** supra págs. 148 y 149. Asimismo, un litigante que no salió favorecido actúa con temeridad si obligó a la otra parte a asumir innecesariamente los gastos de un pleito gracias a su "terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos". Íd., págs. 148-149. Por su parte, académicos como el Dr. José Cuevas Segarra han ofrecido aproximaciones al concepto, reseñando que la temeridad se trata de una actitud que se proyecta sobre el procedimiento, que afecta el buen funcionamiento y la administración de la justicia. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Publicaciones JTS, 2011, T. IV, pág. 1307.

De la mano con estas descripciones, el propósito que se busca con la imposición de honorarios de abogado es castigar a los litigantes que alargan innecesariamente los pleitos ya presentados. Íd. Como ha manifestado nuestro más alto foro, se pretende disuadir la litigación innecesaria y alentar las transacciones, sancionando al temerario de forma tal que se compensen los perjuicios económicos y las molestias sufridas por la otra parte. ***Torres Ortiz v. E.L.A.,*** 136 DPR 556, 565 (1994).

Igualmente, otras instancias en las que nuestro Tribunal Supremo ha reconocido que una parte actúa temerariamente son cuando: (1) contesta la demanda y niega responsabilidad total, pero posteriormente la acepta; (2) se defiende injustificadamente de la acción; (3) cree que la cantidad reclamada es exagerada y es la única razón que tiene para oponerse a las peticiones del demandante, y no admite su responsabilidad pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) se arriesga a litigar un caso del que se desprende *prima facie* su responsabilidad; y (5) niega un hecho que le consta que es cierto. ***C.O.P.R. v. S.P.U.,*** 181 DPR 299,

342 (2011); ***Blas v. Hosp. Guadalupe,*** supra pág. 335; ***Fernández v. San Juan Cement Co., Inc.,*** supra pág. 719.

Ahora bien, también se ha resuelto que no procede el pago de honorarios de abogado cuando: (1) se plantean controversias complejas y novedosas aún no resueltas; (2) se actúa acorde a una apreciación errónea del derecho y no existen precedentes establecidos sobre el asunto; o (3) existe una desavenencia honesta o discrepancia genuina sobre el derecho aplicable a los hechos del caso. ***VS PR, LLC v. Drift-Wind,*** 207 DPR 253, 277 (2021); ***SLG González-Figueroa v. SLG et al.,*** supra pág. 149; ***Blanco Matos v. Colón Mulero,*** 200 DPR 398, 429 (2018); ***Torres Vélez v. Soto Hernández,*** 189 DPR 972, 994 (2013).

Por último, como la Regla 44.1(d) de Procedimiento Civil, *supra,* no detalla la forma y manera en que debe fijarse la cuantía a imponerse por este concepto, la jurisprudencia también ha señalado el camino y ha dispuesto que los tribunales deben tomar en cuenta: (1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada; y (5) el nivel profesional de los abogados. ***C.O.P.R. v. S.P.U.,*** supra, pág. 342.

## IV.

En el caso de marras, el TPI desestimó la *Demanda* impulsada por el BPPR tras concluir que procedía dictar sentencia sumaria a favor de los apelados y que la reclamación dejó de exponer una reclamación que justificara la concesión de un remedio. Según el foro primario, la deuda reclamada no era cierta, ni determinada, ni exigible.

A su juicio, el BPPR: (1) no demostró cómo computó la deuda reclamada; (2) no probó qué cantidad de la línea de crédito utilizó la corporación; (3) no evidenció que los apelados advinieran responsables por la deuda incurrida por la corporación; (4) no logró establecer con claridad las gestiones que realizó para probar su

caso; (5) no sometió la documentación necesaria para probar cada una de sus alegaciones; (6) no demostró válidamente las diligencias realizadas para notificar a los apelados sobre el cobro de dinero; (7) se contradijo en cuanto a la fecha en que la deuda fue declarada vencida y reclamó mensualidades correspondientes a meses posteriores a la alegada cancelación de la línea de crédito; y (8) sustentó sus planteamientos con evidencia que no fue parte del descubrimiento de prueba. A raíz de esto último, el foro primario descartó un estado bancario sometido junto a la declaración jurada de un agente del Banco en apoyo de la solicitud de sentencia sumaria.

Por otra parte, también resolvió que: (1) el BPPR demostró ser el tenedor del pagaré; (2) el pagaré no era un instrumento negociable ni un contrato mercantil; (3) el término prescriptivo para reclamar el incumplimiento era de quince años; (4) la corporación otorgó válidamente el pagaré; y (5) la señora Arana Rivera y el señor Rivera Auffant se obligaron solidariamente a garantizar la deuda.

En descuerdo, el BPPR arguye que el TPI abusó de su discreción porque, al determinar que existían hechos materiales en controversia, debía ordenar la celebración de un juicio plenario para dilucidarlos. En ese mismo sentido, reclama que el foro primario sobrepasó los límites impuestos por el Tribunal de Apelaciones en su *Sentencia* en el caso KLAN202300630 porque la suficiencia de las alegaciones no era una de las controversias que debían atenderse y, aún más, porque una vez se ejerció la función revisora apelativa, quedó confirmada la suficiencia de las alegaciones.

Por otra parte, argumenta que el foro primario se equivocó al descartar completamente la declaración jurada de un agente del Banco presentada en apoyo de su *Moción de sentencia sumaria* y al no rechazar la verificación bajo pena de perjurio que la señora Arana Rivera presentó en su *Oposición a solicitud de sentencia sumaria del*

*BPPR*. Al respecto, arguye que la verificación no es equivalente a una declaración jurada requerida en este contexto por las Reglas de Procedimiento Civil, *supra*. Por último, recalca que la referida oposición se basó únicamente en meras alegaciones y en evidencia inadmisible.

En defensa de la *Sentencia* apelada, la señora Arana Rivera replica que el BPPR no probó la cuantía de la deuda reclamada, ni prevaleció en cuanto a los otros hechos materiales en controversia según esbozados en el dictamen en el caso KLAN202300630. Al mismo tiempo, cuestiona que el Banco intentara someter evidencia no anunciada ni descubierta en violación de una estipulación entre las partes para dar por concluido el descubrimiento de prueba y proceder a que se resolviera el caso mediante mociones dispositivas. Según subraya, la parte apelante accedió a la estipulación a sabiendas de que las alegaciones y los documentos en el expediente no permitían la concesión de un remedio. Por último, solicita que establezcamos un nuevo precedente para casos realmente temerarios como este y le ordenemos al Banco pagar honorarios de abogado a pesar de que la señora Arana Rivera se ha representado ella misma.

Tras un análisis objetivo, sereno y cuidadoso del expediente digital del caso, en correcta práctica adjudicativa apelativa, resolvería que procede confirmar la *Sentencia* apelada porque el TPI no incidió en los errores señalados y, todavía más, desestimó la *Demanda* de forma bien fundada.

Como cuestión de umbral al revisar la disposición sumaria de un pleito, nos corresponde realizar un análisis *de novo* desde la misma posición que el foro primario, tomando en cuenta únicamente la evidencia que las partes presentaron en dicha instancia. En esa encomienda, nos compete evaluar el cumplimiento de las mociones de sentencia sumaria y de sus respectivas

oposiciones con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. Por último, de no haber hechos materiales en controversia que impidan la adjudicación, tenemos la tarea ineludible de examinar si el foro primario aplicó correctamente el derecho.

Ahora bien, casi todos los argumentos del BPPR se centran en que el TPI excedió los límites de la discreción que le permiten las Reglas de Procedimiento Civil, *supra*. Esto, pues, determinó que existían hechos en controversia y desestimó la reclamación bajo el fundamento de dejar de exponer una reclamación que justifique la concesión de un remedio. Para el Banco, el foro primario emitió su dictamen al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*, y, por lo tanto, debió interpretar como ciertos y de la manera más favorable los hechos bien alegados en la *Demanda*. Según plantea, ese análisis debió provocar el rechazo de la desestimación y, junto a la determinación de hechos materiales en controversia, debió llevar a la celebración de un juicio plenario.

Ahora bien, al momento de emitir la *Sentencia* apelada, el TPI tenía ante sí: una *Moción solicitando la desestimación con perjuicio de la Demanda al amparo de la Reglas 10.2 de Procedimiento Civil* y una *Solicitud de sentencia sumaria juramentada y/o de "non suit"* presentadas por la señora Arana Rivera, una *Moción de sentencia sumaria* radicada por el BPPR y las respectivas oposiciones de cada parte. Además, contaba con una estipulación de las partes, realizada durante la *Conferencia sobre Estado de los Procedimientos*, en la que dieron por sometido el caso y acordaron atender el caso mediante mociones dispositivas. Todavía más, de la solicitud de sentencia sumaria de la señora Arana Rivera y de la *Sentencia* apelada se desprende diáfanamente que la atención sumaria del pleito se trató bajo la modalidad de sentencia sumaria <u>por insuficiencia de la prueba</u>. Ello conlleva un rechazo del planteamiento del Banco de que procedía un análisis dentro del

marco de la Regla 10.2(5) de Procedimiento Civil, *supra*, y de que, por lo tanto, la *Sentencia* dictada incumplió los mandatos de dichas Reglas y su jurisprudencia interpretativa. Y es que el TPI no estaba en la etapa de los procedimientos que reclama la parte apelante, toda vez que ya existían determinaciones de hechos – algunas validadas en el caso KLAN202300630 – y se había terminado el descubrimiento de prueba, con la anuencia de ambas partes. Resulta evidente que el TPI se encontraba en posición de atender el pleito de forma sumaria, lo cual también estipularon y solicitaron ambas partes.

En otro planteamiento procesal, el Banco aduce que el TPI no debió descartar completamente la declaración jurada que presentó en apoyo de su *Moción de sentencia sumaria* y, en cambio, enfatiza que se debió rechazar la verificación bajo pena de perjurio que sometió la señora Arana Rivera en oposición a dicha moción. Según insistió, únicamente correspondía que se descartara lo relativo al monto de la deuda.

Por un lado, cabe precisar que el foro primario no tomó en consideración un estado bancario que el BPPR <u>no</u> compartió con los apelados cuando remitió a estos la totalidad del expediente oficial del Banco. Incluso, estimó que carecía de valor probatorio. Al así proceder, resolvió correctamente el TPI porque la evidencia en cuestión no fue presentada y no fue descubierta a la otra parte durante el descubrimiento de prueba. En efecto, el Banco sustentó sus argumentos con evidencia que no fue parte del descubrimiento de prueba y, a todas luces, no estableció su caso. A parte de la inclusión indebida de dicha prueba, la *Moción de sentencia sumaria* del BPPR no adolece de incumplimientos en cuanto a la Regla 36.3 de Procedimiento Civil, *supra*.

Por otro lado, si bien una verificación, bajo pena de perjurio, no constituye una declaración jurada en el contexto de las Reglas

de Procedimiento Civil, *supra*, y si bien esta en particular no contaba con una legitimación de la firma de la suscribiente, ello no impide la determinación que tomó el foro primario en este caso. Las determinaciones de hechos formuladas por el TPI en la *Sentencia* apelada, así como las conclusiones de derecho a las que llegó, encuentran apoyo en el voluminoso expediente del caso y, sobre todo, por la ausencia de prueba para sustentar las alegaciones del BPPR.

Además, independientemente de este posible incumplimiento con la Regla 36.3 de Procedimiento Civil, *supra*, la *Oposición a solicitud de sentencia sumaria del BPPR* radicada por la señora Arana Rivera no presenta un obstáculo a la determinación del TPI, ni su confirmación por esta Curia. De ordinario, si una parte no se opone a una solicitud de sentencia sumaria o lo hace incorrectamente solo se dictará sentencia sumaria en su contra, si procede en derecho. ***Meléndez González et al. v. M. Cuebas,*** supra, pág. 111; Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c).

A tenor con lo expuesto precedentemente, corresponde considerar si el TPI aplicó correctamente el derecho al desestimar la acción promovida por el BPPR. A todas luces, la *Sentencia* apelada constituyó una sentencia sumaria por insuficiencia de prueba. Por ello, el caso de marras debe evaluarse a partir de los criterios aplicables a esa modalidad. Un examen sosegado del expediente del caso y la *Sentencia* apelada arroja claramente que el Banco no prevaleció. En este caso ocurrió y culminó un descubrimiento de prueba completo, adecuado y apropiado. Tanto así que, en la *Conferencia sobre Estado de los Procedimientos*, el representante legal del BPPR dejó claro que no entendía necesario realizar descubrimiento de prueba adicional y que por eso no lo hizo. De esa forma, la parte apelante validó el intercambio de documentos habido entre las partes hasta ese momento. De igual manera, tampoco era

necesario realizar una vista evidenciaria. Incluso, debe destacarse que las partes acordaron proceder a la presentación de mociones dispositivas tras concluir el descubrimiento de prueba.

Más aún, la parte apelante no cumplió con lo requerido para derrotar la sentencia sumaria bajo esta modalidad, a saber: (1) presentar prueba admisible, que pueda tornarse admisible o dé lugar a prueba admisible para probar los elementos esenciales del caso; (2) evidenciar qué prueba en el récord derrotaría la contención de insuficiencia; (3) demostrar que el descubrimiento no fue adecuado, que fue incompleto o que no se realizó; o (4) probar que no conviene resolver el caso mediante sentencia sumaria. *Medina v. M.S & D. Química de P.R., Inc.,* supra, pág. 734. Por el contrario, el expediente está desprovisto de evidencia para constatar el cómputo de la deuda reclamada, qué cantidad de la línea de crédito utilizó Arana Rivera Law Offices, PSC, la debida notificación a los apelados del cobro de dinero, y la fecha en que la deuda fue declarada vencida. Estos son hechos centrales a la causa de acción de cobro de dinero. Para prevalecer, el BPPR tenía que demostrar que la deuda era líquida, vencida y exigible. *Ramos y otros v. Colón y otros*, supra. Sin embargo, no lo hizo.

Todo lo contrario. El Banco no contó con evidencia para establecer que la deuda era líquida, toda vez que la prueba que obra en el expediente no demuestra, ni evidencia que la cantidad debida es cierta y determinada. Es decir, se desconoce la cuantía que presuntamente se debe. Todavía más, tampoco es posible determinar que sea exigible y vencida, puesto que se carece de prueba para discernir cuándo la deuda fue declarada vencida y por qué conceptos debía ser satisfecha por los apelados. Esas son deficiencias irremediables en esta etapa de los procedimientos. La celebración de un juicio en su fondo, ausente prueba para establecer que la deuda reclamada es líquida, cierta, determinada, vencida y

exigible, resultaría en un esfuerzo inútil, un gasto oneroso y un fracaso de la justicia.

Por todo lo anterior, confirmaría la *Sentencia* apelada en su totalidad. No se cometieron los errores señalados y, todavía más, del expediente del caso surge palmariamente que la parte apelante no tenía prueba suficiente para probar su caso. Dicho esto, resolvería que tampoco procede la concesión de honorarios de abogado y costas a favor de la señora Arana Rivera, quien se representó por derecho propio. Y es que tampoco estamos ante un grado de temeridad que lo requiera, toda vez que el litigio ha procedido como resultado de una desavenencia honesta o genuina sobre los hechos y el derecho aplicable.

Por los fundamentos pormenorizados, disiento de la opinión mayoritaria. En su lugar, entiendo que procede confirmar la *Sentencia* apelada.

Ángel R. Pagán Ocasio
Juez de Apelaciones